**FREEMAN UNITED COAL MINING COMPANY, Petitioner,**

v.

**BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR, Director, Office of Workers' Compensation Programs, U.S. Department of Labor and Mary L. Whited (Widow of Warren Whited), Respondents.**

No. 89–2306.

United States Court of Appeals, Seventh Circuit.

Argued May 1, 1990.

Decided July 20, 1990.

Louis R. Hegeman, Jay D. Stein, Karin T. O'Connell, Gould & Ratner, Chicago, Ill., for Freeman United Coal Mining Co.

Linda M. Meekins, Benefits Review Bd., Dept. of Labor, Washington, D.C., for Benefits Review Bd.

Donald S. Shire, Sol. Gen., Office of the Solicitor, Washington, D.C., John H. Secaras, Sol. Gen., Chicago, Ill., Rae Ellen Frank James, Dept. of Labor, Black Lung Div., Washington, D.C., for Office of Workers' Compensation Programs.

Daniel R. O'Brien, Moos, Schmitt & O'Brien, Peoria, Ill., Wayne Reynolds, Wayne Reynolds, Reynolds & Wissore, Belleville, Ill., for Mary F. Whited, (Widow of Warren Whited).

Before BAUER, Chief Judge, CUDAHY, Circuit Judge, and PELL, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Freeman United Coal Mining Company ("Freeman") seeks review of a decision by the Department of Labor's Benefits Review Board (the "Board") upholding an order of an administrative law judge (the "ALJ") awarding Mary L. Whited survivor's benefits under the Black Lung Benefits Act ("Act"), 30 U.S.C. §§ 901 *et seq.* We affirm.

## I.

Mary L. Whited is the surviving spouse of a coal miner, Warren Whited, who died on January 26, 1972. She filed a claim for black lung benefits on June 27, 1977. Mrs. Whited sought benefits under § 921(c)(5) of the Act. This section establishes a rebuttable presumption of entitlement to benefits in the case of a miner who died on or before March 1, 1978, and who was employed for 25 or more years in one or more coal mines prior to June 30, 1971.

On September 25, 1986, the ALJ conducted a formal hearing on the claim. At the hearing, the ALJ admitted into evidence five preprinted form statements from co-workers of Warren Whited indicating that they worked with him at Solar Mine and Buckheart Mine from October 1944 through January 26, 1972. Freeman objected to the admission of these statements, but the ALJ overruled the objection.

The ALJ also admitted two chest x-ray studies and a death certificate. The x-ray studies showed the following:

| DATE X-RAY | DATE READ | DOCTOR/ QUALIFICATIONS | READING |
|---|---|---|---|
| 1/21/70 | 1/21/70 | Sherrick, BCR | clear lungs |
| 11/1/71 | 11/1/71 | Lake, BCR | (1) |

(1) Occasional post inflammatory calcifications. Slight old compression deformity involving the body of T6. No change in the appearance of the chest or thoracic spine since 1–21–70.

The death certificate showed that Warren Whited died on January 26, 1972, while on his way home from the coal mine. The certificate listed coronary occlusion as the immediate cause of his death with hypertension and diabetes mellitus as other significant conditions.

Freeman offered into evidence the report of Dr. Darryl M. Sugar. Dr. Sugar based his report on a review of Warren Whited's chest x-rays, exposure history, death certificate and medical records. In the report Dr. Sugar made these findings:

1. No evidence of coal worker's pneumoconiosis or contribution of this to his death.

2. No history of any type of pulmonary abnormality interfering with his work or his ability to live.

3. His death was related solely to presumptively [sic] coronary vascular disease and hypertension. He had a significant elevation of his cholesterol and electrocardiogram abnormalities.

Mrs. Whited's attorney offered into evidence the transcript of her deposition taken on August 23, 1985. He sought to use the deposition in place of Mrs. Whited's live testimony because she was unable to attend the hearing. Freeman objected to the admission of the deposition because there was no evidence to substantiate Mrs. Whited's inability to attend the hearing. The ALJ reserved ruling on Freeman's objection and ordered Mrs. Whited to produce medical evidence that she was physically unable to attend a hearing. Following the hearing the ALJ received a note from Mrs. Whited's physician, Dr. Russell Dohner, stating that "Mary L. Whited has been under my care for hypertension and nervous tension—please excuse her from court appearance if at all possible." By order dated January 7, 1987, the ALJ admitted the deposition of Mrs. Whited.

The ALJ subsequently awarded black lung benefits to Mrs. Whited and the Board affirmed. This timely petition for review of the Board's decision followed.

## II.

■ Our review is directed to whether the ALJ's decision was supported by substantial evidence, in accordance with law, and rational. *Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 (7th Cir.1988). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is for the ALJ to weigh conflicting evidence and draw inferences from it; a reviewing court may not draw contrary inferences merely because they appear more reasonable or because it questions the factual basis of the ALJ's inferences. *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir.1988).

■ The ALJ properly invoked the 25–year presumption of entitlement to survivor's benefits under 20 C.F.R. § 727.204(a). The evidence clearly established that Warren Whited, who died before March 1, 1978, had a coal mine employment history of at least 25 years as of June 30, 1971. Freeman conceded that Warren Whited worked at least 22¾ years from April 1949 through January 1972. The statements of five coworkers indicated that he worked from October 1944 through January 1972. The deposition testimony of Mrs. Whited was consistent with these statements. She testified that her husband began his coal mine employment in 1944 and continued with this employment until his death in 1972. The ALJ, relying on Mrs. Whited's deposition testimony and the co-workers' statements, found a coal mine history of at least 25 years. Freeman produced no evidence at the hearing to contradict this finding. Since the ALJ's conclusion is rational, supported by substantial evidence and not contrary to law, it must be approved. *See Amax Coal Co. v. Fagg*, 865 F.2d 916, 917 (7th Cir.1989).

■ Freeman argues that the ALJ erred in admitting Mrs. Whited's deposition into evidence because Dr. Dohner's statement provided an insufficient excuse for her failure to attend the hearing. But the ALJ, in conducting the hearing, had broad discretion in the admission of evidence. He did not abuse his discretion in admitting, on the basis of her doctor's note, the deposition of Mrs. Whited. *See* 20 C.F.R. §§ 725.456, 725.461; *Itell v. Richey Trucking Co.*, 8 BLR 1–356 (1985). Freeman, moreover, suffered no prejudice from the admission of the deposition. Freeman was present at the taking of the deposition and had a full opportunity to cross-examine Mrs. Whited.

■ Freeman also argues that the ALJ erred in relying on the five co-workers' statements because these statements were unsworn. But there is no requirement that statements establishing the length of coal mine employment be in affidavit form. *See Vanover v. Director, OWCP,* 6 BLR 1–920 (1984).

■ Further, there was substantial evidence to support the finding of the ALJ that Freeman failed to rebut, pursuant to 20 C.F.R. § 727.204(c), the § 727.204(a) presumption that at his death, Warren Whited was totally or partially disabled due to pneumoconiosis or that he had pneumoconiosis. The evidence of Whited's continued employment up to the date of his death, the two chest x-rays, the death certificate, and the report of Dr. Sugar, are insufficient rebuttal since they do not rule out pneumoconiosis as a cause of respiratory impairment. *Arch Mineral Corp. v. Director, OWCP,* 798 F.2d 215, 222 (7th Cir.1986). In addition, the probative value of this evidence is minimal. First, even though the 1970 chest x-ray indicated that Whited's lungs were clear, the 1971 x-ray indicated post-inflammatory calcifications. Second, Dr. Sugar's report failed to identify the medical records upon which he relied in determining Whited's condition. The report also failed to address the issue whether he was totally or partially disabled. Third, the death certificate did not rule out pneumoconiosis or even indicate whether the coroner was a physician. The remaining evidence—the deposition testimony of Mrs. Whited—was that Warren Whited had "slowed up" in the last several years before he died, and that he "coughed a lot, coughed up phlegm and hurt through his chest and breathing was a problem." She said that, just before he died, "he had a coughing spell and what he coughed up, looked to [her] like it was coal dust." She added that Warren Whited could not climb small hills and had to rest frequently. The ALJ relied on this testimony as well as on the 1971 chest x-ray in awarding survivor's benefits to Mrs. Whited. No doubt this evidence is less than overwhelming but it is, nonetheless, substantial. This is an old claim and it is not surprising that evidence is difficult to adduce.

Based on the evidence of record, we believe that the ALJ's award of benefits is adequately supported and the order of the Board is therefore

AFFIRMED.

PELL, Senior Circuit Judge, dissenting.

With all due respect to the majority opinion, it appears to me that to uphold the decision under review would in effect be to make the presumption, if, indeed, it was involved here, unrebuttable. I do not think this is the law and accordingly I respectfully dissent.